UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LINDA WEBB,<br><br>    Plaintiff,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br><br>    Defendant. | 2:08-cv-1172-LDG-PAL<br><br>**ORDER** |

Plaintiff Linda Webb brought this action alleging that Defendant Hartford Life and Accident Insurance Company ("Hartford") breached its insurance contract, acted with bad faith, and engaged in unfair settlement practices in denying benefits allegedly due on an accidental death and dismemberment policy following the death of Webb's husband. Hartford argues that the relevant policy is part of an employee welfare benefit plan governed by ERISA and that, as such, Plaintiff's claims are preempted by federal law. Plaintiff, however, contends that ERISA does not govern her claims. The parties have accordingly filed cross-motions for summary judgment on the issue (Def.'s motion #39, Pl.'s opposition #49, Def.'s reply #58, Def.'s surreply # 60; Pl.'s motion #49, Def.'s opposition #57, Pl.'s reply #59).

A grant of summary judgment is appropriate only where the moving party has demonstrated through "the pleadings, the discovery and disclosure materials on file, and any affidavits" that there is "no genuine issue of material fact" and that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a), (c); *Anderson v. Liberty Lobby*, 477 U.S.

242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.* The party opposing summary judgment "must cite to the record in support of the allegations made in the pleadings to demonstrate that a genuine controversy requiring adjudication by a trier of fact exists." *Taybron v. City & County of San Francisco,* 341 F.3d 957, 960 (9th Cir. 2003). If the non-moving party meets its burden, summary judgment must be denied. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Stuart v. UNUM Life Ins. Co. of Am.,* 217 F.3d 1145, 1149 (9th Cir. 2000). "To determine whether an insurance plan is an ERISA plan, a district court should consider 29 U.S.C. § 1002(1), which defines an employee welfare benefit plan, and 29 C.F.R. § 2510.3-1(j), which clarifies the meaning of 'establishing and maintaining' such a plan." *Meadows v. Emp'rs Health Ins.,* 826 F. Supp. 1225, 1228 (D. Ariz. 1993). An "employee welfare benefit plan" is:

> [A]ny plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . accident, [or] death . . . .

29 U.S.C. § 1002(1); *see also Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988). Although the mere purchase of insurance does not alone constitute an ERISA plan, purchase of insurance may be evidence of the existence of an ERISA plan. *Kanne*, 867 F.2d at 492. The DOL's "safe harbor regulation" further specifies that an "employee welfare benefit plan"

shall not include a group insurance program offered by an insurer to members of an employee organization, under which:

>(1) No contributions are made by an employer or employee organization;
>
>(2) Participation [in] the program is completely voluntary for employees or members;
>
>(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
>(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). Because exclusion under this "safe harbor" provision requires all four elements, "a group insurance plan cannot be excluded from ERISA coverage when an employer fails to satisfy any one of the four requirements of the safe harbor regulation." *Stuart*, 217 F.3d at 1153.

The parties dispute whether an ERISA plan exists. Hartford maintains that ERISA governs Plaintiff's claims because the insurance policy at issue constitutes part of the AFL-CIO Mutual Benefit Plan ("Plan"). Plaintiff argues, however, that ERISA is inapplicable because any such plan was not "established or maintained by an employer or by an employee organization." 29 U.S.C. § 1002(1). Specifically, Plaintiff argues that the AFL-CIO is not an "employee organization" and that the Plan was not "established or maintained" by the IUOE. An "employee organization" is:

>[A]ny labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships . . . .

*Id.* at § 1002(4). "The plain meaning of this provision, and the cases involving 'employee organizations' in the ERISA context indicate that this provision covers labor unions and other

3

traditional employee organizations established by employees." *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 917 n.9 (9th Cir. 1997). The IUOE is accordingly an "employee organization" under ERISA law. Plaintiff, however, claims that the Plan was not "established or maintained" by the IUOE.

The DOL's "safe harbor" regulation cited above clarifies the meaning of "established or maintained" for the purposes of an ERISA plan. *See Meadows,* 826 F. Supp. at 1228. Hartford only contests the third factor. That factor states:

> The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer.

29 C.F.R. § 2510.3-1(j)(3). Here, the AFL-CIO created and designed the plan, "chose and negotiated" the insurance policy at issue, and promoted and endorsed the policy to union members. Def.'s Mot. for Summ. J. Regarding ERISA Preemption 18, ECF No. 39. Hartford's claim that "Plaintiff was only eligible to participate in the plan due to [IUOE's] subscription to the plan" is central to Hartford's assertion that the IUOE "established or maintained" the Plan at issue. Def.'s Reply in Supp. of its Mot. for Summ. J. Regarding ERISA Preemption 2:7-8, ECF No. 58. A union's subscription may be sufficient to conclude that the union "established or maintained" an ERISA plan. *See Chatterton v. Cuna Mut. Ins. Soc'y*, No. 3:07-0167, 2007 WL 4207395, at *4-5 (S.D. W. Va. Nov. 26, 2007) (holding that a union's subscription agreement to the predecessor AFL-CIO plan constituted a "contribution" inconsistent with the first factor of the "safe harbor" regulation). Hartford, however, has failed to produce any document in which the IUOE expressly subscribed to the Plan or current policy. Hartford has produced a subscription agreement whereby the IUOE expressly subscribed to the predecessor policy, including agreement to endorse the plan and policy, lend use of its logo, and exchange information. Plaintiff makes much of the fact that this subscription agreement expressly states that "the Union is not assuming and shall have no rights or duties with respect to any other policy, that is or may be issued pursuant to any other

4

Supplemental Agreement to the Master Agreement unless the Union elects to separately subscribe to such supplemental Agreement." Hartford correctly notes that the Hartford policy assumed all rights and responsibilities of the exact policy to which the IUOE subscribed, that the Hartford policy was not issued pursuant to any other supplemental agreement, and that Plaintiff's eligibility for the very insurance benefits she now claims presumes the IUOE's adoption of the Plan and policy at issue in this case. Consequently, the IUOE's subscription, and consequent endorsement, demonstrates that the IUOE "established or maintained" an ERISA plan. *See id.* Furthermore, other courts have similarly applied ERISA to suits brought pursuant to the very policy and Plan at issue in this action. *See Scallion v. Hartford Life & Accident Ins. Co.*, 375 Fed. App'x. 431, 432 (5th Cir. 2010); *Scallion v. Hartford Life & Accident Ins. Co.*, No. 08-2001, 2009 WL 3055342, at *2 (W.D. La. Sept. 24, 2009); *Fabyanic v. Hartford Life & Accident Ins. Co.*, No. 02:08-cv-0400, 2009 WL 775404, at *1, *5 (W.D. Pa. Mar. 18, 2009); *Corum v. Hartford Life & Accident Ins. Co.*, 553 F. Supp. 2d 800, 802 (E.D. Ky. 2008). Therefore, viewing the facts in the light most favorable to Plaintiff, there are no genuine issues of material fact as to the existence of an ERISA plan. Accordingly,

THE COURT HEREBY ORDERS that Defendant's summary judgment motion (#39) is REINSTATED pursuant to this court's previous order (#56).

THE COURT FURTHER ORDERS that Defendant's summary judgment motion (#39) is GRANTED.

THE COURT FURTHER ORDERS that Plaintiff's summary judgment motion (#49) is DENIED.

DATED this 19 day of November, 2010.

_____
Lloyd D. George
United States District Judge

5